**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

| | |
|---|---|
| SERGHEI GAIDUT,<br><br>                              Plaintiff,<br><br>         v.<br><br>EQUIFAX INFORMATION SERVICES, LLC; EXPERIAN INFORMATION SOLUTIONS, INC.; and, TRANS UNION LLC,<br>                              Defendants. | Civil Action No. 8:24-cv-1106<br><br>**COMPLAINT AND JURY DEMAND** |

Serghei Gaidut ("Plaintiff" or "Mr. Gaidut") brings this action on an individual basis, against Equifax Information Services, LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), Trans Union LLC ("Trans Union") (collectively the "Credit Bureau Defendants" or "Defendants") and states as follows:

**INTRODUCTION**

1.     Plaintiff, an identity theft victim, brings this action against Defendants for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et. Seq.*

2.     More than twenty million people, just under 10% of all adult Americans, are victims of identity theft each year.[1]  Federal Law requires that each

---

[1] Victims of Identity Theft, 2018, 1. U.S. Dept. of Justice, Bureau of Justice Statistics.  April 2021, NCJ 256085.

1

consumer reporting agency ("CRA") protect victims by taking steps to remove fraudulent information from victims' reports, to ensure that only third parties with permissible purposes see victims' reports and to implement fraud alerts and security freezes at victims' requests. This lawsuit arises from Defendant's refusal to comply with these statutory requirements and resulting failure to protect Plaintiff from identity theft and identity theft consequences.

3.     The computerization of our society has resulted in a revolutionary increase in the accumulation and processing of data concerning individual American consumers. Data technology, whether it is used by businesses, banks, the Internal Revenue Service, or other institutions, allows information concerning individual consumers to flow instantaneously to requesting parties. Such timely information is intended to lead to faster and better decision-making by its recipients and, in theory, all of society should ultimately benefit from the resulting convenience and efficiency.

4.     However, unfortunately this information has also become readily available for, and subject to, mishandling and misuse. Individual consumers can and do sustain substantial damage, both economically and emotionally, whenever inaccurate or fraudulent information is disseminated and/or obtained about them. In fact, the Credit Bureau Defendants acknowledge this potential for misuse and resulting damage every time they sell their respective credit monitoring services to

2

a consumer.

5.     The ongoing technological advances in the area of data processing have resulted in a boon for the companies that accumulate and sell data concerning individuals' credit histories and other personal information. Such companies are commonly known as consumer reporting agencies ("CRAs").

6.     These CRAs sell information to readily paying subscribers (i.e., retailers, landlords, lenders, potential employers, and other similar interested parties), commonly called "consumer reports," concerning individuals who may be applying for retail credit, housing, employment, or a car or mortgage loan.

7.     Since 1970, when Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. ("FCRA"), federal law has required CRAs to implement and utilize reasonable procedures "to assure maximum possible accuracy" of the personal, private, and financial information that they compile and sell about individual consumers.

8.     One of the primary purposes in requiring CRAs to assure "maximum possible accuracy" of consumer information is to ensure the stability of our banking system:

9.     The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which

is essential to the continued functioning of the banking system.

See 15 U.S.C. § 1681(a)(1).

    10.    The preservation of one's good name and reputation is also at the heart

of the FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as deny him the opportunity to obtain a mortgage or buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed.

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 cong. Rec. 36570 (1970)] (emphasis added).

    11.    The FCRA also requires CRAs to conduct a reasonable reinvestigation

to determine whether information disputed by consumers is inaccurate and record

the current status of the disputed information, or delete the disputed information,

before the end of the 30-day period beginning on the date on which the CRA receives

the notice of dispute from the consumer. This mandate exists to ensure that consumer

disputes are handled in a timely manner and that inaccurate information contained

within a consumer's credit report is corrected and/or deleted so as to not prevent said

consumer from benefiting from his or her credit and obtaining new credit.

    12.    In light of these important findings and purposes, Congress specifically

noted "a need to insure that [CRAs] exercise their grave responsibilities with fairness, impartiality, and respect for the consumer's right to privacy." See 15 U. S.C. § 1681(a)(4).

13.     The FCRA also requires Furnishers of information, a creditor or other third party that provides information about consumer to a CRA, upon notice, to conduct a reasonable reinvestigation of all disputes with regard to the completeness or accuracy of any information it provides to the CRAs regarding a consumer and modify, delete, or permanently block any items of information found to be inaccurate, incomplete, or unverifiable after said reinvestigation is completed.

14.     Plaintiff's claims arise out of the Defendants plainly deficient reinvestigations considering Plaintiff's multiple disputes and repeated notice that he was a victim of identity theft.

15.     Specifically, an unauthorized individual stole and used Plaintiff's Oportun credit card information to make two unauthorized purchases on August 5, 2023, $190.00 at Hugo Boss Retail, Inc. and $200.57 at Bath and Body Works, without Plaintiff's authorization or consent.

16.     Oportun notified Plaintiff via a text message fraud alert of the two suspicious charges made on August 5, 2023, seventeen (17) minutes apart.

17.     Plaintiff responded to Oportun's fraud alert that neither of the suspicious purchases were made or authorized by him.

5

18.    Oportun reversed the $190.00 Hugo Boss transaction, but not the $200.57 Bath and Body Works transaction.

19.    Despite Plaintiff's ample notice and sufficient evidence that the aforementioned charges were the product of fraud and identity theft, Oportun reported the fraudulent Bath and Body Works charges amounting to approximately $374.00 with late fees and interest to the Credit Bureau Defendants.

20.    Plaintiff has disputed the same with the Credit Bureau Defendants. Plaintiff has also submitted to the Credit Bureau Defendants a copy of an FTC ID Theft Affidavit.

21.    Despite receiving notice that the Oportun Account charge of $200.57 incurred on August 5, 2023, plus late fees and interest and being reported to Plaintiff's Equifax credit file and/or report was the product of identity theft, Defendant Equifax has failed to suppress or remove or block the identity theft information from Plaintiff's credit file and/or reports, in violation of the FCRA, 15 U.S.C. § 1681 *et. seq.*

22.    Despite receiving notice that the Oportun Account charge of $200.57 incurred on August 5, 2023, plus late fees and interest and being reported to Plaintiff's Experian credit file and/or report was the product of identity theft, Defendant Experian has failed to suppress or remove or block the identity theft information from Plaintiff's credit file and/or reports, in violation of the FCRA, 15

U.S.C. § 1681 *et. seq.*

23.     Despite receiving notice that the Oportun Account charge of $200.57 incurred on August 5, 2023 plus late fees and interest and being reported to Plaintiff's Trans Union credit file and/or report was the product of identity theft, Defendant Trans Union has failed to suppress or remove or block the identity theft information from Plaintiff's credit file and/or reports, in violation of the FCRA, 15 U.S.C. § 1681 *et. seq.*

24.     Accordingly, Plaintiff brings claims against the Credit Bureau Defendants for failing to follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit reports, in violation of the FCRA, 15 U.S.C. § 1681e(b), for failing to conduct a reasonable reinvestigation to determine whether information Plaintiff disputed was inaccurate and in fact, the product of identity theft, and for failing to delete the disputed information from Plaintiffs credit file, in violation of the FCRA, 15 U.S.C. § 1681i, and for failing to block the identity theft items as disputed and supported by Plaintiff in violation of the FCRA, 15 U.S.C. § 1681c-2.

25.     As part of this action, Plaintiff seeks actual, statutory, and punitive damages, costs, and attorneys' fees from the Defendants for their willful and/or negligent violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq., as described herein.

# I.  **JURISDICTION AND VENUE**

26.     This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 because Plaintiff alleges violations of the FCRA, a federal law. See 15 U.S.C. § 1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court).

27.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because Defendants regularly transacts business within this District, are otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

# II. **PARTIES**

28.     Serghei Gaidut ("Plaintiff" or "Mr. Gaidut") is a natural person residing in New Port Richey, Florida, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

29.     Defendant Equifax Information Services, LLC ("Equifax") is a limited liability company with a principal place of business located at 1550 Peachtree Street, N.W., Atlanta, Georgia 30309, and is authorized to do business in the State of Florida, including within this District, and can be served with process by way of its registered agent Corporation Service Company, located at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

30.     Defendant Equifax is a "consumer reporting agency," as defined in 15

U.S.C. § 1681a(f) and is a "person" as defined by 15 U.S.C. § 1681a(b). Defendant Equifax is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

31.    The information that Defendant Equifax collects, maintains, and sells includes confidential details about the income, finances, credit histories, address histories, application histories, credit review histories, and employment histories of 245 million Americans.  Defendant Equifax also collects consumers' personal identifiers, such as Social Security Numbers ("SSNs"), dates of birth, telephone numbers, and addresses.

32.    Defendant Equifax collects and maintains such information about consumers, whether consumers like it or not.  Consumers do not have a choice as to whether Defendant Equifax collects and maintains information about them.  Not only that, but consumers cannot remove information that Defendant Equifax collects and maintains about them from the Equifax database.  Further, Defendant Equifax sells that information about consumers for its unilateral profit, none of which is shared with the Plaintiff, who is the subject of the very data that Defendant Equifax sold.

33.    Defendant Experian Information Solutions, Inc. ("Experian") is a corporation with a principal place of business located at 475 Anton Boulevard, Costa

Mesa, California 92626, and is authorized to do business in the State of Florida, including within this District, and can be served with process by way of its registered agent c/o CT Corporation Systems, 330 N. Brand Boulevard, Glendale, California 91203.

34. Defendant Experian is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f) and is a "person" as defined by 15 U.S.C. § 1681a(b). Defendant Experian is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

35. The information that Defendant Experian collects, maintains, and sells includes confidential details about the income, finances, credit histories, address histories, application histories, credit review histories, and employment histories of 245 million Americans.  Defendant Experian also collects consumers' personal identifiers, such as Social Security Numbers ("SSNs"), dates of birth, telephone numbers, and addresses.

36. Defendant Experian collects and maintains such information about consumers, whether consumers like it or not.  Consumers do not have a choice as to whether Defendant Experian collects and maintains information about them.  Not only that, but consumers cannot remove information that Defendant Experian collects and maintains about them from the Experian database.  Further, Defendant

Experian sells that information about consumers for its unilateral profit, none of which is shared with the Plaintiff, who is the subject of the very data that Defendant Experian sold.

37.   Defendant Trans Union LLC ("Trans Union") is a corporation with a principal place of business located at 555 West Adams Street, Chicago, Illinois 60661, and is authorized to do business in the State of Florida, including within this District, and can be served with process by way of its registered agent Illinois Corporation Service Company, located at 801 Adlai Stevenson Drive, Springfield, Illinois 62703.

38.   Defendant Trans Union is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f) and is a "person" as defined by 15 U.S.C. § 1681a(b). Defendant Trans Union is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

39.   The information that Defendant Trans Union collects, maintains, and sells includes confidential details about the income, finances, credit histories, address histories, application histories, credit review histories, and employment histories of 245 million Americans.   Defendant Trans Union also collects consumers' personal identifiers, such as Social Security Numbers ("SSNs"), dates of birth, telephone numbers, and addresses.

40.     Defendant Trans Union collects and maintains such information about consumers, whether consumers like it or not.  Consumers do not have a choice as to whether Defendant Trans Union collects and maintains information about them.  Not only that, but consumers cannot remove information that Defendant Trans Union collects and maintains about them from the Trans Union database.  Further, Defendant Trans Union sells that information about consumers for its unilateral profit, none of which is shared with the Plaintiff, who is the subject of the very data that Defendant Trans Union sold.

## SUMMARY OF THE FAIR CREDIT REPORTING ACT

41.     The FCRA governs the conduct of consumer reporting agencies to preserve the integrity of the consumer banking system and to protect the rights of consumers to fairness and accuracy in the reporting of their credit information.

42.     The FCRA was designed to protect consumers from the harmful effects of inaccurate information reported in consumer reports (commonly referred to as "credit reports"). Thus, Congress enshrined the principles of "fair and accurate credit reporting" and the "need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness" in the very first provision of the FCRA. See 15 U.S.C. § 1681(a).

43.     Specifically, the statute was intended to ensure that "consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce

for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information.  See 15 U.S.C. § 1681(b).

44.    Congress also recognized that CRAs such as the Credit Bureau Defendants "have assumed a vital role in assembling and evaluating consumer credit and other information on consumers." 15 U.S.C. § 1681(a)(3).  Therefore, Congress determined that there "is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy."  15 U.S.C. § 1681(a)(4).

45.    For that reason, Congress ensured that the FCRA also provides special protections for victims of identity theft.

46.    The first form of protection is the "block."  When a consumer identifies any information in their credit file that is the product of identity theft, the CRA must block (delete) the reporting of that information within four business days, provided the consumer submits:

a.    Appropriate proof of the identity of the consumer;

b.    A copy of an identity theft report;

c.    The identification of such information by the consumer; and,

d.    A statement by the consumer that the information is not information relating to any transaction by the consumer.

15 U.S.C. § 1681c-2(a).15 U.S.C. § 1681c-2(a).

47.    The second form of protection the FCRA provides for identity theft victims is the "fraud alert."

48.    Specifically, upon request of the consumer, a CRA must place an "initial fraud alert" in the file of that consumer and provide that alert along with any credit score generated in using that file, for one year beginning on the date of the request.  Unless one year has passed, the CRA can only remove the alert if the consumer requests removal and the CRA receives "appropriate proof of the identity of the requester." 15 U.S.C. § 1681c-1(a)(1).

49.    The third form of protection the FCRA provides for identity theft victims is a "security freeze," which a consumer can request from nationwide CRAs such as the Defendants here.

50.    A security freeze prohibits a CRA from disclosing the contents of a consumer report that is subject to the freeze to any person requesting the consumer report.[2]   15 U.S.C. § 1681c-1(i)(1).  Stated otherwise, if a consumer's report is frozen, a CRA will not be able to sell it to creditors assessing credit applications from identity thieves using an affected consumer's identity.

51.    Once placed, a security freeze does not expire.  A CRA can remove a

---

[2] Certain statutorily exempt entities can still request and receive a frozen report. See 15 U.S.C. § 1681c-1(i)(4).  But those exemptions do not apply to the matter at hand.

security freeze only at "the direct request of the consumer," or if it finds that the freeze "was placed due to a material misrepresentation of fact by the consumer." 15 U.S.C. § 1681c-1(i)(3)(A). Furthermore, when a consumer requests removal, the CRA must first obtain "proper identification" from the consumer before removing the freeze." 15 U.S.C. § 1681c-1(i)(3)(C).

52.    The fourth and final form of protection the FCRA provides for identity theft victims is that even in the absence of a security freeze, a CRA may only release a consumer report to a person "which it has reason to believe...intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished..." 15 U.S.C. § 1681b(a). When a credit transaction is not initiated by the consumer, a CRA may only release the consumer's report with the consumer's authorization or if the user is making a firm offer of credit. 15 U.S.C. § 1681b(c). No consumer reporting agency may furnish a consumer report to any person if it has reasonable grounds for believing that the consumer report will not be used for a permissible purpose. 15 U.S.C. § 1681e(a).

53.    Beyond the protections specific to identity theft victims, the FCRA imposes the following twin duties on consumer reporting agencies: (i) consumer reporting agencies must devise and implement reasonable procedures to ensure the "maximum possible accuracy" of information contained in consumer reports (15 U.S.C. § 1681e(b)); and (ii) consumer reporting agencies must reinvestigate the facts

and circumstances surrounding a consumer's dispute and timely correct any inaccuracies (15 U.S.C. § 1681i).

54.    The FCRA provides consumers with a private right of action against consumer reporting agencies, such as the Credit Bureau Defendants that willfully or negligently fail to comply with their statutory obligations under the FCRA.

## FACTUAL ALLEGATIONS
### Identity Theft Incident

55.    In October 2021, Plaintiff opened an Oportun Credit Card to be used for household, family, or personal purposes.

56.    Plaintiff has never made any purchases from Bath and Body Works.

57.    Prior to August 2023, Plaintiff's balance on his Oportun Credit Card Account was $0.00.

58.    On August 5, 2023, Plaintiff received a fraud alert text message from Oportun asking Plaintiff if he made the following suspicious charges on August 5, 2003, on his card ending in 6576: $190.00 Hugo Boss Retail, Inc. and $200.57 Bath and Body Works.  Plaintiff replied "N" for No and called the fraud alert number provided in the text message.

59.    Plaintiff spoke to an Oportun representative at the number provided in the fraud alert text message and explained that neither the $190.00 Hugo Boss Retail, Inc. charge nor the $200.57 Bath and Body Works charge were made by him or

authorized by him.

60.     Oportun reversed the Hugo Boss Retail, Inc. charge of $190.00, but not the Bath and Body Works charge of $200.57.

**Plaintiff Submits Multiple Direct Disputes to Oportun**

61.     In or around August 2023, Plaintiff disputed the $200.57 Bath and Body Works charge to Oportun via Oportun's online portal.

62.     Plaintiff received correspondence from Oportun dated September 1, 2023, confirming his dispute had been received.

63.     In a letter dated September 17, 2023, Oportun stated that their investigation was complete, and they found that the Bath and Body Works charge was valid.

64.     On September 30, 2023, Plaintiff disputed the Bath and Body Works charge with Oportun via telephone.  Plaintiff also disputed the late fee he was now being assessed on the unpaid fraudulent $200.57 Bath and Body Works charge.

65.     During the September 30, 2023, telephone call, Oportun's representative stated that they would reinvestigate the dispute and reverse the late fee.

66.     Additionally, during the September 30, 2023, telephone call, Plaintiff made a payment to Oportun in the amount of $114.19, the amount he owed for purchases made by him during the billing cycle.  The only balance that remained

was the disputed $200.57 Bath and Body Works charge.

67.     As of the date of this filing, Oportun has not reversed the Bath and Body Works charge of $200.57.  Moreover, Oportun is charging Plaintiff late fees and interest on the disputed charge.

**Plaintiff's First Dispute to the Credit Bureau Defendants**

68.     On or about January 4, 2024, Plaintiff obtained a copy of his credit reports from annualcreditreport.com for all Defendants.

69.     Upon review of his credit reports, Plaintiff discovered that Oportun was reporting to the Credit Bureau Defendants that Plaintiff was past due 30 days, with a balance owed ranging from $323 to $374. The balance was related to the $200.57 fraudulent Bath and Body Works charge plus late fees and interest.

70.     Plaintiff determined that he needed to escalate the issue to prevent damage to his credit, disputed the Oportun account with Defendants.

71.     On January 15, 2024, Plaintiff filed an Identity Theft Affidavit with the FTC.

72.     On or about January 19, 2024, Plaintiff mailed three separate letters, via certified mail, to each Defendant disputing the charges on the Oportun Credit Card Account.

73.     With his dispute, Plaintiff provided a copy of the August 5, 2023, Fraud Alert text message he received from Oportun that identified the Hugo Boss and Bath

and Body Works charges. In addition, Plaintiff provided the following documents to sufficiently identify Plaintiff:

- a copy of two letters he received from Oportun, dated September 1, 2023, and September 17, 2023, stating that they completed their investigation.

- a copy of his driver's license.

- a copy of his social security card.

- a copy of the FTC Fraud Affidavit.

- a copy of an Oportun statement.

74.     Plaintiff requested that the identify theft information be blocked from his credit file.

**Defendant Equifax's Unreasonable Dispute Reinvestigation**

75.     On or about January 25, 2024, Defendant Equifax received Plaintiff's dispute and request that identity theft information be blocked from his credit file.

76.     Upon information and belief, Plaintiff submitted the FTC Identity Theft Report in support of his dispute to Equifax.

77.     Upon information and belief, Defendant Equifax sent Oportun an automated credit dispute verification ("ACDV") pursuant to Plaintiff's January 2024 dispute to Defendant Equifax.

78.     Upon information and belief, Oportun responded to Defendant

Equifax's ACDV in relation to Plaintiff's January 2024 dispute.

79.     On February 3, 2024, Defendant Equifax issued dispute results to Plaintiff wherein it communicated that the disputed information would not be blocked.

80.     Further, the disputed information would not be corrected, modified, or deleted because it had verified that the disputed information was accurate.

81.     On March 11, 2024, Plaintiff received his updated credit report from Equifax, dated March 7, 2024, Equifax did not remove the disputed information.

82.     Defendant Equifax failed to adequately review all of the information provided to it by Plaintiff.

83.     Defendant Equifax failed to reinvestigate Plaintiff's January 2024 dispute.

84.     Defendant Equifax violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to recognize that the disputed charges were the product of identity theft.

**Defendant Experian's Unreasonable Dispute Reinvestigation**

85.     On or about January 25, 2024, Defendant Experian received Plaintiff's dispute and request that identity theft information be blocked from his credit file.

86.     On January 30, 2024, Defendant Experian issued a letter to Plaintiff in

response to Plaintiff's dispute stating that the dispute was not sent by Plaintiff.

87.    On January 31, 2024, Plaintiff sent another dispute letter to Defendant Experian.

88.    On February 13, 2024, Plaintiff received correspondence from Experian containing a status letter dated February 7, 2024, stating that the dispute was opened.

89.    Also, in correspondence dated February 7, 2024, Experian requested that additional information be provided in order to block the fraudulent account.

90.    Plaintiff does not know what additional information he could provide Experian.  Plaintiff in his dispute letter to Experian provided:  a screen shot of the fraud text alert from Oportun and his response, a copy of the letters he received from Oportun concerning the dispute, as well as, an Oportun Account Statement, FTC Identity Theft Report, and a copy if his Florida Driver's License and his Social Security Card.

91.    Upon information and belief, Defendant Experian sent Oportun an ACDV pursuant to Plaintiff's January 2024 dispute to Defendant Experian.

92.    Upon information and belief, Oportun responded to Defendant Experian's ACDV in relation to Plaintiff's January 2024 dispute.

93.    On February 29, 2024, Defendant Experian issued dispute results to Plaintiff wherein it communicated that the disputed information would not be

blocked.

94. Further, the disputed information would not be corrected, modified, or deleted because it had verified that the disputed information was accurate.

95. On March 15, 2024, Plaintiff received his updated credit report from Experian dated March 7, 2024, Experian did not remove the disputed account.

96. Defendant Experian failed to adequately review all of the information provided to it by Plaintiff.

97. Defendant Experian failed to reinvestigate Plaintiff's January 2024 dispute.

98. Defendant Experian violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to recognize that the disputed charges were the product of identity theft.

**Defendant Trans Union's Unreasonable Dispute Reinvestigation**

99. On or about January 24, 2024, Defendant Trans Union received Plaintiff's dispute and request that identity theft information be blocked from his credit file.

100. On February 13, 2024, Defendant Trans Union issued a letter dated January 27, 2024, to Plaintiff in response to Plaintiff's dispute stating that it did not appear that Plaintiff or an authorized third party had sent the dispute.

101.   On February 15, 2024, Plaintiff sent another dispute letter to Trans Union.

102.   Upon information and belief, Defendant Trans Union sent Oportun an ACDV pursuant to Plaintiff's February 2024 dispute to Defendant Trans Union.

103.   Upon information and belief, Oportun responded to Defendant Trans Union's ACDV in relation to Plaintiff's February 2024 dispute.

104.   On March 7, 2024, Plaintiff received correspondence from Trans Union dated February 24, 2024, stating that Plaintiff's block request was missing personal identifying information.

105.   Plaintiff does not know what additional "personal identifying" information he could provide Trans Union.  Plaintiff included in his dispute a copy of his Florida Driver's License and his Social Security Card as well as a screen shot of the fraud text alert from Oportun and his response, a copy of the letters he received from Oportun concerning the dispute, an Oportun Account Statement, and the FTC Identity Theft Report.

106.   On March 15, 2024, Defendant Trans Union issued dispute results to Plaintiff dated March 6, 2024, wherein it communicated that the disputed information would not be blocked.

107.   Further, the disputed information would not be corrected, modified, or deleted because it had verified that the disputed information was accurate.

108.   On March 11, 2024, Plaintiff received his updated credit report from Trans Union dated March 7, 2024, Trans Union did not remove the disputed information.

109.   Defendant Trans Union failed to adequately review all of the information provided to it by Plaintiff.

110.   Defendant Trans Union failed to reinvestigate Plaintiff's February 2024.

111.   Defendant Trans Union violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to recognize that the disputed charges were the product of identity theft.

**Credit Lines Reduced, Closed, and Denied as Result of Identity Theft**

112.   On October 13, 2023, Plaintiff received a letter from Discover Card notifying him that his line of credit was being reduced from $6,000 to $4,800.

113.   Specifically, Discover Card stated that its decision was based on Plaintiff's Trans Union, LexisNexis, and Experian credit reports. The only derogatory account Plaintiff has on his credit reports is related to the fraudulent Bath and Body Works charge on his Oportun Account.

114.   Plaintiff reasonably believes that Discover Card's decision was due to the fraudulent Bath and Body Works charge on his Oportun Account.

115.   Additionally, on October 19, 2023, Plaintiff received a letter from Citibank notifying him that his line of credit was being reduced from $13,500 to $7,090.

116.   Specifically, Citibank stated that its decision was based on Plaintiff's Equifax credit report.  The only derogatory account Plaintiff has on his credit reports is related to fraudulent Bath and Body Works charge on his Oportun Account.

117.   Moreover, on January 20, 2024, Plaintiff received another letter from Citibank further reducing his line of credit from $7,090 to $4,240.

118.   Specifically, Citibank stated that its decision was based on Plaintiff's Equifax credit report.  The only derogatory account Plaintiff has on his credit reports is related to fraudulent Bath and Body Works charge on his Oportun Account.

119.   Plaintiff reasonably believes that Citibank's decision was due to the fraudulent Bath and Body Works charge on his Oportun Account.

120.   On February 9, 2024, Plaintiff received notice from Synchrony Bank that it was closing his Sam's Club Mastercard Account ending in 8255. Specifically, Synchrony Bank stated that it based its decision on Plaintiff's Trans Union credit report.  The only derogatory account Plaintiff has on his credit reports is related to fraudulent Bath and Body Works charge on his Oportun Account.

121.   Plaintiff reasonably believes that Synchrony Bank's decision to close his Sam's Club Mastercard was due to the fraudulent Bath and Body Works charge

on his Oportun Account.

122.   On February 15, 2024, Plaintiff applied for a Best Egg loan with Cross River Bank and/or Blue Ridge Bank.  Plaintiff's loan application was denied.

123.   Specifically, Cross River Bank and Blue Ridge Bank based their denial decision on Plaintiff's Experian credit report.  The only derogatory account Plaintiff has on his credit reports is related to fraudulent Bath and Body Works charge on his Oportun Account.

124.   Plaintiff reasonably believes that Cross River Bank and Blue Ridge Bank's decisions were due to the fraudulent Bath and Body Works charge on his Oportun Account.

125.   Furthermore, on March 29, 2024, Plaintiff applied for an Achieve Personal loan.  Plaintiff's loan application was denied.

126.   Specifically, Achieve based its denial decision on Plaintiff's Experian credit report.  The only derogatory account Plaintiff has on his credit reports is related to fraudulent Bath and Body Works charge on his Oportun Account.

127.   Plaintiff reasonably believes that Achieve's decision was due to the fraudulent Bath and Body Works charge on his Oportun Account.

128.   Wells Fargo Bank also reduced Plaintiff's line of credit for his Wells Fargo Visa Card Account ending in 2085.  Plaintiff's August 2023 Wells Fargo Account statement showed a credit limit of $6,000.00.  Plaintiff's March 2024 Wells

Fargo Account statement showed a much-reduced credit limit of $2,100.00.

129.   Plaintiff reasonably believes that Wells Fargo's decision was due to the fraudulent Bath and Body Works charge on his Oportun Account.

130.   Furthermore, Synchrony Bank reduced Plaintiff's line of credit for his Synchrony Bank Account ending in 2355.  Plaintiff's August 2023 Synchrony Bank Account ending in 2355 statement showed a credit limit of $13,000.00.  Plaintiff's March 2024 Synchrony Bank Account ending in 2355 statement showed a much-reduced credit limit of $11,160.00.

131.   Plaintiff reasonably believes that Synchrony Bank's decision was due to the fraudulent Bath and Body Works charge on his Oportun Account.

132.   Plaintiff is frustrated that his disputes to the Credit Bureau Defendants have fallen on deaf ears and that as he had worried, he has suffered, including the aforementioned credit revocation, denials, and limits reduced due to the inaccurate information still reporting to his credit files and published on his credit reports to his current and prospective creditors.

## PLAINTIFF'S DAMAGES

133.   Plaintiff did exactly what he should have done upon realizing he was the victim of identity theft and that there were fraudulent charges on his Oportun Credit Card Account.

134.   Plaintiff immediately responded to the Oportun Fraud alert text that the

suspicious charges were not his.

135.   Plaintiff repeatedly followed up and disputed with Oportun.

136.   Plaintiff filed an FTC ID Theft Affidavit.

137.   Plaintiff disputed with Defendants Equifax, Experian, and Trans Union.

138.   Plaintiff identified himself as an identity theft victim and requested an Identity Theft Block be applied to his credit file.

139.   As of the time of the filing of this complaint, Defendant Equifax has failed to block the Identity Theft information.

140.   As of the time of the filing of this complaint, Defendant Experian has failed to block the Identity Theft information.

141.   As of the time of the filing of this complaint, Defendant Trans Union has failed to block the Identity Theft information.

142.   As of the time of the filing of this complaint, Defendant Equifax continues to maintain in Plaintiff's credit file information that was disputed and identified as the product of identity theft and fraud.

143.   As of the time of the filing of this complaint, Defendant Experian continues to maintain in Plaintiff's credit file information that was disputed and identified as the product of identity theft and fraud.

144.   As of the time of the filing of this complaint, Defendant Trans Union continues to maintain in Plaintiff's credit file information that was disputed and

identified as the product of identity theft and fraud.

145.  As of the time of the filing of this complaint, Defendant Equifax continues to publish to Plaintiff's prospective and current creditors information that was disputed and identified as the product of identity theft and fraud.

146.  As of the time of the filing of this complaint, Defendant Experian continues to publish to Plaintiff's prospective and current creditors information that was disputed and identified as the product of identity theft and fraud.

147.  As of the time of the filing of this complaint, Defendant Trans Union continues to publish to Plaintiff's prospective and current creditors information that was disputed and identified as the product of identity theft and fraud.

148.  As a direct result of the Credit Bureau Defendants' ardent refusal to block the disputed information, the Credit Bureau Defendants have continued to saddle Plaintiff with a $323 debt which was the product of identity theft and fraud.

149.  Due to Defendants' ardent refusal to comply with their respective obligations pursuant to the FCRA, Plaintiff was forced to obtain legal advice and counsel, for which he incurred attorney's fees.

150.  Further, and due to Defendants' inexplicable refusal to remove and/or block information that is the product of identity theft and fraud from an identity theft victim's credit file, Plaintiff expended countless hours disputing the same with the Defendants.

151.   Defendants' conduct disrupted Plaintiff's life.

152.   Defendants' conduct caused Plaintiff's Line of Credit with numerous banks to be reduced, denied, and even revoked.

153.   Plaintiff has had to put off needed home renovations because he was denied credit due to the fraudulent charge being reported in his Oportun Account on his credit reports.

154.   Moreover, Plaintiff has had to put off dental surgery because he is unable to obtain financing due to the fraudulent charge on his Oportun Account that Defendants are reporting inaccurately. As a result, Plaintiff deals with daily pain in discomfort.

155.   Plaintiff's reduced credit lines have also harmed his credit by increasing his credit utilization, which significantly impacts his credit worthiness.

156.   It has taken him an incredible amount of time to document the events, secure his credit, and track down supporting documents, all of which affected his ability to spend time working.

157.   In addition to impacting his work productivity and income, dealing with the consequences of Defendants' conduct has taken Plaintiff away from time he would otherwise have spent with his friends and family.  It has taken a toll on Plaintiff.

158.   Defendants' conduct has caused Plaintiff extreme and ongoing stress

and anxiety.  Plaintiff has suffered sleepless nights, frustration, worry, and ultimately felt utterly hopeless that Defendants would ever properly reinvestigate his disputes. Further, Plaintiff reasonably believes that the fraudulent inquiries have negatively impacted and depressed his credit score.  Plaintiff fears Defendants' conduct has caused irreparable damage to his credit score.

159.   At all times pertinent hereto, Defendants were acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

160.   At all times pertinent hereto, the conduct of Defendants, as well as that of their representative agents, servants, and/or employees, was intentional, willful, reckless, grossly negligent and in utter disregard for federal law and the rights of Plaintiff herein.

161.   After initially learning of the identity theft, Plaintiff did all the right things to protect himself and to ensure his credit file was secure.

162.   Plaintiff's ongoing stress and anxiety over the situation, and after repeatedly receiving one non-responsive communication after another from the Defendants, Plaintiff feels a surge of panic each time he receives another communication from the Defendants.  His ongoing stress and anxiety regarding the situation have negatively affected him and his relationships.

163.   The Defendants have had years of notice in the form of federal lawsuits, despite it all, the Defendants failed to take any better steps to protect the Plaintiff here.

164.   The internal policies and procedures of the Credit Bureau Defendants do not appear to place any value on their obligations under the FCRA to report credit entries accurately, to reinvestigate carefully when notified of consumer disputes, and to avoid giving third parties access to consumers' reports without authorization or permissible purpose.

165.   As a standard practice, the Credit Bureau Defendants do not conduct independent investigations in response to consumer disputes.  Instead, they merely parrot the response of the data furnishers, like Oportun here, despite numerous court decisions admonishing this practice.  See *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997) (The 'grave responsibilit[y]' imposed by § 1681(a) must consist of something more than merely parroting information received from other sources.  Therefore, a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute."); *Apodaca v. Discover Fin. Servs.*, 417 F. Supp. 2d 1220, 1230-31 (D.N.M. 2006) (noting that credit reporting agencies may not rely on automated procedures that make only superficial inquiries once the consumer has notified it that information is disputed); *Gorman v. Experian Info. Sols., Inc.*, 2008 WL 4934047,

32

at *6 (S.D.N.Y. Nov. 19, 2008).

166.   The Defendants are aware of the shortcomings of their respective procedures and intentionally choose not to comply with the FCRA to lower their costs.  Accordingly, the Defendants' violations of the FCRA are willful.

167.   Defendants' policies and procedures clearly establish willfulness, wantonness, and utter and reckless disregard for the rights and interests of consumers and led directly to the injuries of Plaintiff as described in this complaint.

168.   As a result of Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; reduced overall creditworthiness; revocation of credit; the expenditure of time and money disputing and trying to remove the inquiries which were the product of identity theft; and, the expenditure of labor and effort disputing and trying to remove identity theft information.

169.   Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose veracity is doubted and questioned and disbelieved by the Defendants.

33

**COUNT I**
**15 U.S.C. § 1681e(b)**
**Failure to Follow Reasonable Procedures to**
**Assure Maximum Possible Accuracy**
**(The Credit Bureau Defendants)**

170.   Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully set forth herein.

171.   The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

172.   On numerous occasions, the Credit Bureau Defendants prepared patently false consumer reports concerning Plaintiff.

173.   Despite actual and implied knowledge that Plaintiff was the victim of identity theft, the Credit Bureau Defendants readily and repeatedly sold such false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately, Plaintiff's creditworthiness by suggesting that Plaintiff charged and owed $323.00 to Oportun.

174.   A third-party reviewing Plaintiff's credit reports would reasonably infer that Plaintiff was a bad credit risk.

175.   In fact, at least one creditor, Synchrony Bank, concerning Plaintiff's Sam's Club Mastercard Account ending in 8255, did review and infer exactly that

and worst yet, acted upon its fear and revoked Plaintiff's line of credit.

176. Defendant Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

177. Defendant Experian violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

178. Defendant Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

179. As a result of the Credit Bureau Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; reduced overall creditworthiness; revocation of credit; the expenditure of time and money disputing and trying to remove the inquiries which were the product of identity theft; and, the expenditure of labor and effort disputing and trying to remove identity theft information.

180.   Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose veracity is doubted and questioned and disbelieved by the Credit Bureau Defendants.

181.   The Credit Bureau Defendants' conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  In the alternative, the Credit Bureau Defendants were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

182.   Plaintiff is entitled to recover attorneys' fees and costs from the Credit Bureau Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT II**
**15 U.S.C. § 1681i**
**Failure to Perform a Reasonable Reinvestigation**
**(The Credit Bureau Defendants)**

183.   Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully set forth herein at length.

184.   The FCRA mandates that a CRA conduct an investigation of the accuracy of information "[I]f the completeness or accuracy of any item of

information contained in a consumer's file" is disputed by the consumer. See 15 U.S.C. § 1681i(a)(1). The Act imposes a 30-day limitation for the completion of such an investigation. Id.

185. The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is in fact inaccurate or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file. See 15 U.S.C. § 1681i(a)(5)(A).

186. In January 2024 , Plaintiff disputed the inaccurate information with the Credit Bureau Defendants and requested that they correct and/or delete a specific item in his credit file that is patently inaccurate, misleading, and highly damaging to him, namely, the $323 furnished by Oportun and allegedly owed by Plaintiff for purchases that were the product of fraud and identity theft.

187. Plaintiff disputed the identity theft information to the Credit Bureau Defendants, to no avail.

188. Plaintiff supported his disputes with a copy of the FTC ID Theft Affidavit.

189. Despite actual and implied knowledge that Plaintiff was the victim of identity theft, and in response to Plaintiff's disputes, the Credit Bureau Defendants conducted virtually no investigations of Plaintiff's disputes, or such investigations were so shoddy as to allow patently false and highly damaging information to remain

in Plaintiff's credit file.

190. Plaintiff expended resources in the form of time and money to repeatedly dispute the information that was the product of fraud and identity theft with the Credit Bureau Defendants.

191. The Credit Bureau Defendants' refusal to remove the information that was the product of fraud and identity theft lent credibility to the disputed debt and suggested to all third parties that Plaintiff did in fact owe that debt.

192. Defendant Equifax violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which they received the notices of dispute from Plaintiff; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file.

193. Defendant Experian violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which they received the notices of dispute from Plaintiff; and by failing to maintain reasonable procedures with which to filter and verify disputed information in

Plaintiff's credit file.

194.   Defendant Trans Union violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which they received the notices of dispute from Plaintiff; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file.

195.   As a result of the Credit Bureau Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; reduced overall creditworthiness; revocation of credit; the expenditure of time and money disputing and trying to remove the inquiries which were the product of identity theft; and, the expenditure of labor and effort disputing and trying to remove identity theft information.

196.   Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose veracity is doubted

and questioned and disbelieved by the Credit Bureau Defendants.

197.   The Credit Bureau Defendants' conduct, actions, and inactions was willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  In the alternative, the Credit Bureau Defendants were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

198.   Plaintiff is entitled to recover attorneys' fees and costs from the Credit Bureau Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

### COUNT III
### 15 U.S.C. § 1681c-2
### Failure to Block Identity Theft Information
### (The Credit Bureau Defendants)

199.   Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

200.   Plaintiff repeatedly submitted ample evidence of the fact that he was an identity theft victim.  Plaintiff further supported the fact that he was an identity theft victim by providing an FTC ID Theft Affidavit.

201.   The Credit Bureau Defendants should have blocked the identity theft information at the outset.

202.   Defendant Equifax violated 15 U.S.C. § 1681c-2 by failing to block the reporting of the disputed information, which was due to identity theft, from

Plaintiff's file.

203. Defendant Experian violated 15 U.S.C. § 1681c-2 by failing to block the reporting of the disputed information, which was due to identity theft, from Plaintiff's file.

204. Defendant Trans Union violated 15 U.S.C. § 1681c-2 by failing to block the reporting of the disputed information, which was due to identity theft, from Plaintiff's file.

205. As a result of the Credit Bureau Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; reduced overall creditworthiness; revocation of credit; the expenditure of time and money disputing and trying to remove the inquiries which were the product of identity theft; and, the expenditure of labor and effort disputing and trying to remove identity theft information.

206. Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose veracity is doubted and questioned and disbelieved by the Credit Bureau Defendants.

207.   Additionally, the Credit Bureau Defendants' conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  In the alternative, the Credit Bureau Defendants were negligent, entitling Plaintiff to recover under

208.   Plaintiff is entitled to recover attorneys' fees and costs from the Credit Bureau Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

(a)   WHEREFORE, Plaintiff respectfully requests that this Honorable Court grant the following relief against Defendants: Declaratory judgment that Defendants violated the FCRA, 15 U.S.C. § 1681;

(b)   An award of actual, statutory, and punitive damages pursuant to 15 U.S.C. §§ 1681, *et seq.;*

(c)   An award of costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n and § 1681o; and,

(d)   Such other and further relief as this Honorable Court may deem just and proper, including any applicable pre-judgment and post-judgment interest, and/or declaratory relief.

## **JURY DEMAND**

Plaintiff hereby demands jury trial on all issues so triable.

RESPECTFULLY SUBMITTED this 8th day of May 2024

> **CONSUMER ATTORNEYS**
> */s/ Catherine Tillman*
> Catherine Tillman, Esq., FL #0057663
> CONSUMER ATTORNEYS
> 8245 N. 85th Way
> Scottsdale, AZ 85258
> T: (941) 263-7310
> F: (718) 715-1750
> E: ctillman@consumerattorneys.com
>
> *Attorneys for Plaintiff,*
> *Serghei Gaidut*